E-FILED
CNMI SUPREME COURT
E-filed: Jul 15 2026 11:08AM
Clerk Review: Jul 15 2026 11:08AM
Filing ID: 80034965
Case No.: 2025-SCC-0017-ADA
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

IN RE MATTER OF ROBERT H. MYERS, JR.,
*Respondent-Appellee.*

**Supreme Court No. 2025-SCC-0017-ADA**

---

**SLIP OPINION**

**Cite as: 2026 MP 6**

Decided July 15, 2026

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.

———————

Superior Court Civil Action No. 24-0161
Presiding Judge Joseph N. Camacho, Presiding

———————

CASTRO, C.J.:

¶ 1     This appeal presents a narrow question of interpretation: what does Rule 7(a)(2) of the Rules of Attorney Discipline and Procedure mean when it provides that the Disciplinary Committee must be "elected by a majority vote of active members of the Bar Association"? The trial court concluded that the phrase requires the support of a majority of the CNMI Bar Association's entire active membership and, based on that interpretation, dismissed a disciplinary complaint against attorney Robert H. Myers, Jr. ("Myers"). We hold that Rule 7(a)(2) requires only a majority of the votes cast by active members. Because the Disciplinary Committee was therefore properly elected, we REVERSE and REMAND.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2     Myers was suspended from the practice of law in the CNMI for failure to pay Bar membership dues. The Bar Association mailed the notice of the suspension order to the address provided on his Bar renewal form. The letter went unclaimed and was returned. Myers maintains that he never received the order and was never properly served with it.

¶ 3     While the suspension remained in effect, Myers gave a legal opinion to the Rota Casino Gaming Commission and identified himself as their counsel. A member of the Disciplinary Committee was appointed to investigate. On July 17, 2024, prosecuting counsel filed a disciplinary complaint with the trial court alleging that Myers continued to engage in the practice of law in the CNMI after his suspension.

¶ 4     At the time the complaint was referred for prosecution, the Disciplinary Committee consisted of five people, two who were elected in February and three elected in February 2023. In 2022, the CNMI Bar Association had 166 active members; the two candidates elected each received 13 votes of the 13 votes cast. In 2023, the Bar had 154 active members; the three candidates elected each received 17 votes of the 17 votes cast.

¶ 5     Myers moved to dismiss, arguing the Disciplinary Committee members had not been properly elected and therefore lacked the authority to investigate or refer disciplinary complaints. At around this same time, the Legislature was considering a set of proposed changes to the Rules of Attorney Discipline and Procedure, which would have included amending the text of Rule 7(a)(2) to "majority of votes cast." Shortly after Myers moved to dismiss, the Legislature rejected the proposed changes.

¶ 6     The motion was granted on the grounds that a "majority vote of active members" required each member to receive affirmative votes from a majority of the Bar's entire active membership, including temporary members. The order further concluded that Bar members who failed to vote should effectively be counted as votes against every candidate. It also cited the Legislature's rejection of the proposed amendment as evidence of legislative intent supporting the order's interpretation of Rule 7(a)(2).

¶ 7    Applying that interpretation, the trial court concluded that none of the Committee members had been validly elected because no candidate received the requisite number of affirmative votes. As a result, it determined that the Committee lacked authority to initiate disciplinary proceedings and dismissed the action against Meyers. Prosecuting counsel timely appealed.

## II. JURISDICTION

¶ 8    The Supreme Court has jurisdiction over final judgments and orders of the Superior Court. 1 CMC § 3102(a); NMI CONST. art. IV, § 3.

## III. STANDARD OF REVIEW

¶ 9    The interpretation of the NMI Rules of Attorney Discipline and Procedure is a question of law reviewed de novo. *See DS Corp v. Long Feng Corp.*, 2025 MP 8 ¶ 7 (reviewing interpretation of court rules de novo).

## IV. DISCUSSION

### A. Majority Vote Means a Majority of the Vote

¶ 10    Disciplinary Committee members must be elected by a "majority vote of active members of the Bar Association." NMI R. ATT'Y DISC. & P. R. 7(a)(2). Read as written, that phrase carries its ordinary electoral meaning: a majority of the votes cast by those eligible to cast them. *See Lake County Sheriff's Merit Board v. Buncich*, 869 N.E.2d 482, 486 (Ind. Ct. App. 2007) (discussing dictionary definitions of "majority vote"); *Virginian R. Co. v. Sys. Fed'n*, 300 U.S. 515, 560 (1937) ("Election laws providing for approval of a proposal by a specified majority of an electorate have been generally construed as requiring only the consent of the specified majority of those participating in the election"). The trial court read it to require the affirmative support of more than half the entire active membership, including temporary members, no matter how many members vote.

¶ 11    This interpretation rewrites the rule as the grammar provides no support for this reading. "Majority" modifies "vote," not "members." *See United States v. Gaines*, 154 F.4th 1317, 1320 n.3 (11th Cir. 2025) ("the basic rule for the placement of adjectives […] [is] the adjective comes right before the noun it modifies") (internal quotations omitted); *but see United States ex rel. Cent. S. Constr. Corp. v. Gulf Bldg.*, 568 F. Supp. 3d 1395, 1400–01 (S.D. Ga. 2021) (noting that canons and rules of grammar should be applied sensitive to context). Here, the meaning suggested by the placement of "majority" is confirmed by the usual function of the preposition phrase. The phrase "of active members of the Bar Association" identifies who may vote; it says nothing about the denominator for measuring a majority. The Supreme Court has long recognized language determining the pool of eligible voters does not serve double-duty as identifying the number of votes required to achieve a majority. *See Carroll Cty. v. Smith*, 111 U.S. 556, 565 (1884) (stating that a requirement for a two-third majority vote of "qualified voters" meant a two-thirds majority of "not those qualified and entitled to vote, but those qualified and actually voting"). The trial court's construction erases that distinction, treating the rule as if it read "elected by a majority of active members" and discarding "vote" entirely. Courts do not read words out of

a text. *See Palacios v. Yumul*, 2012 MP 12 ¶ 4 (holding every word in a text is presumed to carry meaning, and constructions rendering language redundant or meaningless are disfavored).

¶ 12     The trial court reasoned a member who did not vote had effectively determined none of the candidates were worthy of election. Rule 7(a)(2) contains no such instruction. The rule identifies who may vote and requires election by a majority vote; it does not prescribe how nonvoters are to be counted. Under the trial court's reading, a member who affirmatively opposes a candidate and a member who simply does not participate are treated identically. The text draws no such equivalence. Rather than treating non-voting as active opposition to the proposition up for election, jurisdictions across the United States have long considered it assent to the expressed will of those voting. *Underwood v. Guam Election Comm'n*, 2006 Guam 17 ¶ 24 (citing *County of Cass v. Johnston*, 95 U.S. 360, 369 (1877)); *State ex rel Walker v. LaRose*, 174 N.E.3d 735, 741–42 (Ohio 2021). We find this interpretation more persuasive and adopt it.

¶ 13     Our reading aligns with how other jurisdictions interpret similar vote provisions. In *Buncich,* a statute required election to the merit board by "a majority vote of the members of the county police force." 869 N.E.2d at 485–86. Although Buncich received a majority of the votes cast, the board argued he was not elected because he failed to secure a majority of all members of the police force. *Id.* Applying the same grammatical analysis presented here, the Indiana Court of Appeals held "majority" modified "vote," while the phrase "of the members of the county police force" identified the class of eligible voters. *Id.* at 486. The statute therefore required a majority of the votes cast, not a majority of the entire membership. The court noted that other statutes requiring approval by "a majority vote of all the elected members" confirmed the point. *Id.* at 487. Because the legislature used the "all" language elsewhere but omitted it from the provision at issue, the court declined to read it into the statute. *Id.*

¶ 14     Those omitted words or an equivalent appear in the rules at issue in many of the authorities Myers cites to support the trial court's interpretation. *State ex rel. Peterson v. Hoppe* required "the affirmative vote of a majority of all members of the city council to appoint such officers." 260 N.W. 215, 217 (Minn. 1935) (emphasis added). *Ross v. Miller* required "a majority of *all* the members." 178 A. 771, 772 (N.J. 1935) (emphasis removed). *Ezell v. City of Pascagoula* required "a majority of *all* of the members of the council." 240 So. 2d 700, 701 (Miss. 1970) (emphasis removed). *Chandler v. Bullitt County Joint Planning Commission* required "a majority of the *entire* legislative body." 125 S.W.3d 851, 854 (Ky. Ct. App. 2002) (emphasis added). In each, "all" or "entire" modified the default rule. Rule 7(a)(2) contains no such word.

¶ 15     Myers's remaining authorities, and the trial court's analogy to impeachment, are equally inapposite. *State Local Gov't Employee-Management Rels. Bd. v. Educ. Support Emps. Ass'n* measured union certification against whether the organization was "supported by a majority of the local government employees in a particular bargaining unit." 429 P.3d 658, 662 (Nev. 2018). The

plain language of this statute expressly required support from a majority within the bargaining unit. *Id. Peak Inv. v. S. Peak Homeowners Ass'n* likewise involved an amendment to the homeowner's covenant which required approval by "owners having more than 50 percent of the votes." 44 Cal. Rptr. 3d 892, 894 (Cal. Ct. App. 2006). The relevant statute required this majority to have "voted in favor of the amendment." *Id.* In both cases, the subject language clearly indicated that a majority of votes would be insufficient. Such clear language is known and utilized within the CNMI: the impeachment clause requires "the affirmative vote of two-thirds of [the Legislature's] members." NMI CONST. art. II, § 8. In each instance, the governing text expressly measures affirmative support against the entire body. Rule 7(a)(2) does not.

¶ 16    This textual distinction reflects the functions these provisions serve. Union certification determines representation for every employee in the bargaining unit. *State Local Gov't Employee-Management Rels. Bd*, 429 P.3d at 662. Requiring affirmative consent rationally helps ensure the employees are accurately represented and reassures the employer of the organization's value as a negotiating party. The other two situations are exceptional, not routine, matters. A covenant amendment typically alters the rights and obligations of every property owner. *See Kalway v. Calabria Ranch HOA, LLC*, 506 P.3d 18, 24 (Ariz. 2022) (discussing the necessity of notice for amendments in light of a covenant's ability to bind all landowners, including a dissenting minority, to restrictions of the covenant). Impeachment removes a public officer. *See* NMI CONST. art. III, § 19 (providing for impeachment of governor and lieutenant governor).

¶ 17    By contrast, the Disciplinary Committee has an ongoing and necessary but limited role in investigating complaints and determining whether they should proceed to a disciplinary hearing. Final authority to impose discipline rests with the Court. The limited powers of the Disciplinary Committee mean the policy concerns motivating more stringent voter turn-out requirements in those cases are not present. The trial court's analogy fails both textually and structurally.

¶ 18    The trial court's reliance on the Legislature's rejection of the 2024 amendment is equally misplaced. Legislative inaction is an unreliable guide to meaning. Failed proposals are "a particularly dangerous ground on which to rest an interpretation," because "[a] bill can be proposed for any number of reasons, and . . . rejected for just as many others." *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 169–70 (2001) (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, *N.A.*, 511 U.S. 164, 187 (1994)). Members of subsequent legislatures may recognize the alleged implications of existing law and support them, or recognize them and hope no one else does, or simply not recognize them. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 670 (2020). A reform bill which does not pass into law barely speaks to the intent of the legislature which did not pass it and says nothing at all on the intent of the legislature which approved the original rule. *See id.* The rejection may reflect disagreement with the proposal, or any number of unrelated concerns.

¶ 19    That leaves the trial court's principal concern that a majority-of-votes-cast standard permits a relatively small portion of the Bar to elect the Disciplinary Committee. Rule 7(a)(2), however, contains no minimum-turnout requirement and no language conditioning election on participation by a specified percentage of the Bar's membership. It speaks only of a majority vote. If broader participation is thought necessary, that judgment must come from amendment of the rule rather than judicial construction of it.

¶ 20    Furthermore, the Bar Association's bylaws undercut the articulated policy concern. Article II, Section 6 provides that active members present at a duly noticed meeting constitute a quorum "regardless of number." An organization that expressly permits official business to proceed with whatever number of members choose to participate cannot plausibly be read to have silently imposed a stricter voting threshold for Disciplinary Committee elections alone. *See Bostock*, 590 U.S. at 669 (noting that a legislature's failure to speak about the law's applicability to a specific area does not create exceptions in the general statutory rules).

*B. Service of the Suspension Order is a Factual Issue Insufficiently Developed*

¶ 21    Myers offers an alternative ground for affirmance. He contends the Bar Association failed to properly serve him with the suspension order he was later charged with violating and the resulting defect requires dismissal however the election issue is resolved. We decline to reach the issue. As a general matter, this Court does not consider questions that were neither raised nor decided below. *Marine Revitalization Corp. v. Dep't of Land & Natural Res.*, 2011 MP 2 ¶ 3. While Myers did raise the service issue below, the trial court dismissed on the election ground alone and made no findings regarding service.

¶ 22    Although this Court may consider pure questions of law not addressed below, that authority does not extend to disputed factual matters the trial court has never resolved. *Id.* ¶ 5. Nor does Myers's characterization of the issue as jurisdictional alter the analysis. The premise of Myers's argument, whether service in fact failed, remains a contested question of fact. Whether service of process was sufficient is not for an appellate court to determine in the first instance, only to review with deference. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (decisions on the sufficiency of service of process are reviewed for abuse of discretion).

¶ 23    The trial court made no findings about whether service of process was completed or how. It only noted the suspension letter was returned to the Bar Association, unclaimed. Additionally, as Myers notes, we have previously found a service defect from the Disciplinary Committee cured by the case's narrow and specific circumstances. *In re Woodruff*, 2013 MP 1 ¶ 12. These circumstances included factual questions such as simultaneous service from this Court, the appearance of the attorney in question at the hearing, and the attorney arguing "well beyond our usual time limits." *Id.* No findings related to specific circumstances of the service were made by the trial court as it decided the case on a threshold issue of whether the Committee had the authority to proceed at all.

¶ 24 The question of which, if any, of the Committee's actions constituted proper service is a factual question we do not have the means to resolve here. *See In re Est. of Ayuyu*, 2 NMI 243, 247 (1991) ("In the absence of an adequate record bearing on these issues, it is necessary to remand this matter for further fact-finding"). A jurisdictional label cannot compel appellate resolution of an issue that rests on unresolved facts. We express no view on the merits of the service question and the trial court may address the issue on remand if properly raised.

### V. CONCLUSION

¶ 25 The text of Rule 7(a)(2) controls. The requirement that Disciplinary Committee members be "elected by a majority vote of active members of the Bar Association" means a majority of the votes cast by active members in the election. Nothing in the rule requires the affirmative support of a majority of the Bar Association's entire active membership. Because the Disciplinary Committee members who authorized the complaint were duly elected, the trial court erred in holding that the Committee lacked the authority to proceed. The judgment is therefore REVERSED, and the matter is REMANDED for further proceedings consistent with this opinion.

SO ORDERED this 15th day of July 2026.

  /s/
ALEXANDRO C. CASTRO
Chief Justice

  /s/
JOHN A. MANGLOÑA
Associate Justice

  /s/
ROBERT J. TORRES, JR.
Justice Pro Tempore

#### COUNSEL

Cong Nie, Saipan, MP, for Appellant.

Michael W. Dotts, Saipan, MP, for Appellee.

#### NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it remains subject to revision or withdrawal. If any discrepancies arise between this slip opinion and the opinion ultimately certified for publication, the certified opinion will control. Readers are requested to bring any errors to the attention of the Clerk of the Supreme Court at P.O. Box 502165, Saipan, MP 96950; telephone (670) 236–9715; or e-mail Supreme.Court@NMIJudiciary.gov.*



**E-FILED**
**CNMI SUPREME COURT**
E-filed: Jul 15 2026 11:08AM
Clerk Review: Jul 15 2026 11:08AM
Filing ID: 80034965
Case No.: 2025-SCC-0017-ADA
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**IN RE MATTER OF ROBERT H. MYERS, JR.,**
*Respondent-Appellee.*

---

**Supreme Court No. 2025-SCC-0017-ADA**
Superior Court Civil Action No. 24-0161

## JUDGMENT

Prosecuting Counsel Cong Nie appealed the trial court's order dismissing a disciplinary complaint against Robet H. Myers. For the reasons set forth in the accompanying opinion, the Court REVERSES the order and REMANDS for further proceedings.

ENTERED this 15th day of July, 2026.



 /s/
JUDY T. ALDAN
Clerk of the Supreme Court